UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRIS LIGHTELL                                          CIVIL ACTION

VERSUS                                                  NO. 11-2735

NORTHROP GRUMMAN SHIPBUILDING, INC.                     SECTION "B" (3)

ORDER

On March 7, 2012, the Motion to Dismiss or Alternatively, Motion for Summary Judgment [Doc. #11] came on for oral hearing before the undersigned.  Present were Willard Brown on behalf of plaintiff and Nina English on behalf of defendant.  After the oral hearing, the Court took the motion under advisement.  Having reviewed the motion, the opposition, the case law and the parties' oral arguments, the Court rules as follows.

I.      **Background**

The allegations are as follows.  Pursuant to the terms of a Collective Bargaining Agreement ("CBA"), the New Orleans Metal Trades Council, AFL-CIO ("the Union") and Northrop Grumman Ship Systems ("NGSS") jointly established an Apprenticeship Program.   The Program identifies the "Sponsor" as NGSS and the Union, which are jointly responsible for the administration and successful operation of the program and also to "receive, process, and make disposition of complaints." The Program also identifies the "employer" as NGSS.  Supplemental rules by a Joint Apprenticeship Committee ("JAC") of the Apprenticeship Program further clarify that the JAC has

the authority to discipline apprentices who do not meet on-the-job or schools standards established by the JAC.   These supplemental rules also establish a separate "Sub-Committee" of the JAC to administer each craft-specific program within the Apprenticeship Program.   Thus, the JAC was responsible for providing oversight of the Apprenticeship Program, and it enacted the "rules and requirements governing the qualifications, education, and training of all [apprentices]."   The JAC, along with the Sub-Committee for each craft-specific program, was also responsible for accepting apprentices, disciplining apprentices and setting the work schedules of the apprentices.  NGSS paid the salaries of the apprentices in the program.

On January 28, 2008, plaintiff Chris Lightell, a bipolar white male, applied for a position as a regular apprentice in the Apprenticeship Program.   Based on Lightell's application, the JAC selected him as a Pipefitter—Regular Apprentice ("RA") for the Pipefitter craft-specific program of the Apprenticeship Program.   Pursuant to the Standards of Apprenticeship, Lightell entered  a written apprenticeship agreement with NGSS and the Union.   In addition, Lightell acknowledged that he understood that he was subject to the "rules and regulations [that] have been approved by the [JAC]."

The Apprenticeship Program required Lightell to attend class once a week at Delgado Community College and to work at the shipyard for practical training on scheduled days.   While working at the shipyard, an assigned supervisor, a black female, evaluated Lightell.

On January 13, 2010, Lightell became ill and was placed on medical leave.   Lightell remained on intermittent medical leave from January through May 2010.  In March 2010, he missed six days because of a sinus infection, for which Dr. Lawrence Zaslow provided care.  On March 9, 2010, Lightell was admitted to East Jefferson General Hospital ("East Jefferson") for four days after

a mild heart attack.  East Jefferson discharged him on March 12, 2010, but he remained under the doctor's care until March 31, 2010.  Lightell also remained under the care of Dr. David Persich, his treating physician, from March 30 through April 12, 2010.  On March 30, 2010, Persich advised NGSS that Lightell is totally disabled and unable to work.

Lightell later underwent surgery on May 14, 2010 and remained off work until June 2, 2010.  On May 18, 2010, an ultrasound revealed a mass on Lightell's kidney.  He then remained under his doctor's care until released for work on June 7, 2010.

During his tenure in the Apprenticeship Program before his medical leave in January 2010, Lightell did not fail any evaluations and scored from good to well.  In his March 2010 evaluation, however, he received an overall rating of 64 on his Apprentice Monthly evaluation.[1]   Lightell received another failing grade of 68 on his monthly evaluation for May 2010.  Both failing monthly evaluations noted his poor attendance and poor technical ability during the particular month.

Accordingly, the Pipefitting Sub-Committee for the JAC met to consider Lightell's performance, and,  on June 14, 2010, recommended his termination based on his failing monthly evaluations. The recommendation was approved by the two Union members and the two members of NGSS of the JAC.  The JAC notified the representative from the Pipefitter Union, Local 60 Business Agent, who agreed with the recommendation of the JAC.

On June 16, 2010, Lightell filed a grievance with the head of the Louisiana Apprenticeship Committee and the Louisiana Department of Labor ("DOL"), alleging indifferent treatment.  On November 15, 2010, the DOL held a hearing after which its concluded that NGSS had violated company policy when it performed an evaluation of Lightell when he was out on approved medical

---

[1]         A rating below 70 is considered failing.

leave.

Earlier, on August 17, 2010, Lightell had filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against Northrop Grumman Shipbuilding, Inc. ("NGSB") only.[2] In his EEOC complaint, Lightell alleged that he was discharged on the basis of race (white), alleged disability, and for allegedly opposing practices made unlawful under Title VII.  In his charge, Lightell alleged that he was discharged following two periods of medical leave, hospitalization and surgery in March and May 2010.  After receiving a right-to-sue letter, Lightell sued NGSB, alleging termination and retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

## II.    Law and Analysis

### A.    Summary Judgment Standard[3]

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in [his] favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson*

---

[2]    Defendant NGSB was known as NGSS at the time of plaintiff's employment.  For ease of reference, the Court refers to defendant as NGSB, the named defendant on the complaint (unless explicitly noted).

[3]    Once the Court accepts matters outside the pleadings – as it does here – the Court must convert a motion to dismiss into a motion for summary judgment.  *Metro Riverboat Assocs., Inc. v. Bally's La., Inc.*, No. Civ. A. 99-2660, 2000 WL 351707, *4 (E.D. La. Apr. 5, 2000).

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).   The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324.   The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### B.   Failure to State a Claim under the FMLA, the ADA and Title VII[4]

#### 1.   FMLA

The FMLA requires covered employers to provide eligible employees with up to twelve weeks of leave during any twelve-month period if the employee has a serious health condition that makes him unable to perform the functions of his position.   29 U.S.C. § 2612(a)(1)(D).   Leave may be taken intermittently if medically necessary. *Id.*   As with all leave under FMLA, the employee "must make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer." *Id.* § 2614(e)(2)(A).   An employee taking intermittent leave is required to notify the employer as soon as practicable of his intent to take leave on particular dates if those dates are initially unknown. 29 C.F.R. § 825.302(a).

---

[4]   NGSB styles their argument as a failure to state a claim under the applicable statutes.   As noted above, however, because the Court considers evidence outside the complaint itself, it must convert the argument into one for summary judgment.

Under the FMLA, a "serious health condition" includes an illness, injury, impairment or physical condition that involves inpatient care or continuing treatment by a health care provider. *See Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 579 (5th Cir. 2006) (citing 29 C.F.R. § 825.114(a)).  When an employee returns from leave, the employee is entitled to be restored to his original position or to an equivalent position. 29 U.S.C. § 2614(a)(1)(A).  The FMLA further provides that "[n]othing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave." *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 925-26 (5th Cir.1999) (quoting 29 U.S.C. § 2614(a)(3)).

The FMLA contains two distinct provisions.  The first is a set of substantive rights or entitlements.  *Nero*, 167 F.3d at 927.  The employer may not "interfere with, restrain, or deny the exercise of, or the attempt to exercise," any right under FMLA. 29 U.S.C. § 2615(a)(1).  In the context of an interference claim, once the employee has met the statutory requirements, he is entitled to leave under the FMLA.  As such, the employer's intent is irrelevant.  *Mauder*, 446 F.3d at 580.  The second provision under the FMLA protects employees from retaliation or discrimination for exercising their rights under the FMLA.  *Id.* (citation omitted); 29 U.S.C. § 2615(a)(2).

Here, NGSB argues that it is unclear whether Lightell asserts a claim under Section 2615(a)(1) or (a)(2).  Even if that were clear, NGSB contends that Lightell fails to establish that he is an eligible employee because he does not allege that he worked at least 1250 hours during the preceding 12 months.  29 U.S.C. § 2611(2)(A).  Further, NGSB asserts that Lightell fails to allege a "serious health condition" that would entitle him to protection under the FMLA.  As noted, the FMLA defines "serious health condition" as "[a]n illness, injury, impairment, or physical or mental

condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Lightell recognizes the vagueness of his FMLA claim.[5] Lightell notes that the exhibits to his memorandum in opposition reveal that he remained under a doctor's care for a serious condition, a condition that one doctor opined as total disability. Lightell contends that he can amend his complaint to more explicitly allege his FMLA claim. Having reviewed the pleadings and the exhibits to the motion, the Court can not find at this stage of the litigation that there is no genuine issue of material fact as to whether Lightell will be able to explicitly plead and/or to sustain his claim under the FMLA. Neither summary judgment nor dismissal is warranted at this time. However, and to afford NGSB the opportunity to further respond to Lightell's FMLA claim, the Court orders Lightell to amend his complaint within ten (10) days of the date of this Order to allege with more specificity his claim under the FMLA.

## 2.   ADA

Title I of the Americans with Disabilities Act addresses disability-based discrimination in the employment context. Title I's main anti-discrimination provision prohibits covered employers from:

> discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms and conditions, and privileges of employment.

42 U.S.C. § 12112(a). A plaintiff asserting a Title I discrimination claim must establish that: (1) he is qualified for his position; (2) he has a disability; and (3) he was discriminated against because of

---

[5]   At oral argument, counsel for Lightell argued that a potential issue with prescription forced him to file the complaint when he did and with the information that he had at that time.

his disability. *Jenkins v. Cleco Power, L.L.C.*, 487 F.3d 309, 315 (5th Cir. 2007). Another of the ADA's provisions bars covered employers from retaliating against employees who engage in activities protected by the Act. 42 U.S.C. § 12203.

In its motion, NGSB argues that Lightell fails to allege that he has a disability. NGSB contends that the evidence in the record demonstrates that Lightell had only temporary limitations due to his medical condition. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities . ., a record of such impairment[,] or being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). A physical impairment may include "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479-80 (1999), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). Major life activities "are those activities that are of central importance to most people's everyday lives," *Jenkins*, 487 F.3d at 315, including, but not limited to, "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 317 (5th Cir. 2001) (quoting 29 C.F.R. § 1630.2(i)). A major life activity will be considered "substantially limited" when the individual is:

> (i) [u]nable to perform a major life activity that the average person in the general population can perform; or
> (ii) [s]ignificantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000) (quoting 29 C.F.R. §

8

1630.2(j)).  To determine whether an impairment is substantially limiting, courts may consider the nature and severity of the impairment, the expected duration of the impairment, and the expected permanent or long term impact resulting from the impairment.  *EEOC v. Agro Distrib., L.L.C.*, 555 F.3d 462, 470 (5th Cir. 2009).

Lightell contends that he suffered serious medical conditions and remained under a doctor's care.  He also notes that his treating physician opined that he is totally disabled and unable to work. He asserts that he can provide a more definite statement of his disability on amendment.  As with the FMLA claim, having reviewed the pleadings and the exhibits to the motion, the Court finds that a genuine issue of fact exists as to whether Lightell will be able to explicitly plead and/or to sustain his claim under the ADA.  Summary judgment and/or dismissal is thus inappropriate at this time. However, and to afford NGSB the opportunity to further respond to Lightell's claim, the Court orders Ligthell to amend his complaint within ten (10) days of the date of this Order to allege with more specificity his claim under the ADA.

### 3.    Title VII

NGSB argues that Lightell has failed to assert a claim for race discrimination under Title VII because he has only alleged in a conclusory fashion that he was terminated because of his race. NGSB contends that Lightell has failed to allege any specifics regarding the identity, job description, supervisors, job performance or circumstances of the "African American Employees" who were allegedly treated more favorably than him.  NGSB also notes that Lightell only asserts in a conclusory fashion that he was retaliated against but makes no reference to any protected activity in which he may have engaged.

To establish a prima facie case of race discrimination, the plaintiff must demonstrate that he

is: (1) a member of a protected class; (2) qualified for the position; (3) suffered an adverse employment action; and, (4) was replaced by someone outside of the protected class, or that others outside of the protected group and similarly situated were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 512–13 (5th Cir. 2001).

Lightell argues only that "'but for' being continuously ill, he would not have been terminated from th [sic] apprenticeship program nor his employment." [Pl.'s Mem. Opp. Summ. J. at p. 17]. Citing other Title VII case law for general propositions, Lightell fails to apply such case law to his own lawsuit. His allegations concerning other black employees are conclusive and unsupported by any explicit facts or circumstances. There is no evidence – nor does Lightell even argue – that he can provide further allegations through amendment. Unlike with respect to Lightell's FMLA and ADA claims, none of the exhibits attached to Lightell's pleadings supports a claim for race discrimination under Title VII. Simply mentioning that his co-workers were "African American" and that he was treated indifferently is insufficient to allege a claim under Title VII. Accordingly, the Court grants summary judgment to NGSB on this claim.[6]

## III.    Conclusion

For the reasons outlined above,

**IT IS ORDERED** that Defendant's Motion to Dismiss or Alternatively, Motion for Summary Judgment [Doc. #11] is GRANTED IN PART and DENIED IN PART. The Court dismisses Lightell's claim under Title VII and grants summary judgment to defendant on the claim. The Court also orders Lightell to amend his complaint within ten (10) days with further allegations

---

[6]     Because the Court grants summary judgment to NGSB with regard to Lightell's Title VII claim on this ground, the Court does not address NGSB's argument that it was not Lightell's employer for purposes of Title Vii.

to support his claims under the FMLA and the ADA.  Failure to do so will result in dismissal of such

claims.  This Order reserves the right to defendant NGSB to re-assert any substantive motion should

Lightell fail to satisfy the requirements of this Order.

New Orleans, Louisiana, this 28th day of March, 2012.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

11